## **AFFIDAVIT**

1.    Your affiant is a DEA Task Force Officer (TFO) assigned to the Montgomery Resident Office, HIDTA Task Force.  I am an investigator or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2.    I am currently employed with the Montgomery, Alabama Police Department, and have been so employed for the past eight and one half (8 ½) years.  I am currently assigned to the DEA New Orleans Division, the Montgomery Resident Office at the HIDTA Task Force in Montgomery, Alabama and have been deputized as a Federal Task Force Officer.  I have worked exclusively on narcotics investigations for four (4) years.  I have investigated criminal violations of the federal laws, including, but not limited to, investigations involving the manufacture, transportation and distribution of controlled substances in violation of Title 21, United States Code 841; conspiracy to distribute drugs in violation of Title 21, United States

1

Code, Section 846; use of a phone in furtherance of a drug

trafficking crime, in violation of Title 21, United States

Code, Section 843(b); and money laundering, in violation of

Title 18, United States Code, Section 1956 and 1957.

3. As part of my duties as a DEA Task Force Officer, I

have participated in long-term historical conspiracy

investigations, as well as, complex investigations

targeting international drug traffickers. I have testified

in federal judicial proceedings. I have been involved in

the debriefing of defendants, witnesses and informants, as

well as others who have knowledge of the distribution and

transportation of controlled substances and of the

laundering and concealing of proceeds derived from drug

trafficking. Further, I have participated in numerous

narcotic investigations in which I have supervised or

participated in physical surveillance, electronic

surveillance, undercover transactions, controlled drug

purchases and the execution of search warrants.

Specifically, I have participated in and supported Title

III investigations involving the use of wire communications

interceptions through monitoring, technical operations,

surveillance, arrests and prosecution.

2

4. I have conducted and participated in investigations that have resulted in the arrest of individuals who smuggled, transported, received and distributed controlled substances. I have conducted/participated in investigations that resulted in the seizure of illegal drugs including, but not limited to, multiple kilogram quantities of cocaine, large quantities of marijuana, large quantities of methamphetamine and various designer drugs which are controlled substances. Further, in connection with these and other narcotics cases, I have conducted follow-up investigations relating to the concealment of assets, money, bank records, etc., and the identification of millions of dollars in illegal drug proceeds. I have identified co-conspirators through the examination of ledgers, telephone bills, records, finical records and photographs. I am familiar with, and have participated in all of the normal methods of investigation, including, but not limited to, foot, auto, air, video and electronic surveillance, questioning of witnesses, the use of search and arrest warrants, the use of informants, the use of pen registers, traps and traces, cellular telephone site tracking, mobile tracking devices and the use of undercover agents.

5.    Based on my training, experience, and
participation in investigations of federal narcotics
violations, I am familiar with drug organizations and know
that such organizations will commonly compartmentalize
members in an effort to limit individual knowledge of the
operations of the organization to as few persons as
possible.   To minimize their risks of apprehension leaders
of drug organizations commonly attempt to distance
themselves from drugs and drug proceeds, so that they are
not associated with the drugs or drug proceeds nor are they
in the same physical proximity of the drugs and drug
proceeds any more than necessary. Thus, leaving
subordinates to drive vehicles and move the drugs and drug
proceeds from place to place.

6.    I have attended and completed sources of
instruction from the DEA relating to investigative
techniques in narcotics and financial investigations. I
have received training, both formal and informal in nature,
in drug trafficking and money laundering investigations. I
have received training in complex conspiracy and financial
investigations. I have received training in investigations
involving the interception of wire communications. I have
also participated in investigations involving the

4

interception of wire communications and of electronic communications of digital display paging devices. I am familiar with the ways in which narcotics traffickers conduct their business, including, but not limited to, their methods of importing and distributing narcotics, their use of telephones, cellular telephones, multiple cellular phones and their use of numerical codes and code words to conduct their transactions.

7.    This affidavit is submitted for the purpose of establishing probable cause for a complaint against John CHAVEZ . I obtained the information contained in this affidavit from oral and written reports about this investigation that I have received, directly or indirectly from Investigators/Detectives involved in this investigation.

8.    I have investigated and I continue to investigate a drug distribution operation involving, John CHAVEZ, Modesta BARAJAS-DE CHAVEZ and other known and unknown individuals. This organization is responsible for the distribution of multi-kilogram quantities of drugs, namely methamphetamine in the Middle District of Alabama.

9.    On April 22, 2014, United States District Judge W. Harold Albritton signed an order authorizing the

interception of wire communications over cellular telephone
(334) 452-9434 (TARGET TELEPHONE 1).

On May 1, 2014, agents conducting a court ordered wire
intercept of telephone number 334-452-9434(Target Telephone
#1), which is used by Modesta BARAJAS-DE CHAVEZ,
intercepted telephone conversations indicating that CHAVEZ
would be traveling to the Dallas, Texas area in order to
receive a large quantity of methamphetamine.

10. On May 1, 2014, approximately 4:26 P.M., CST, agents
    conducting a court order wire intercept on 334-452-9434
    (TT#1), a cellular telephone used by Modesta CHAVEZ,
    intercepted an outgoing call (session 459) to 334-414-
    3942, which is a telephone used by John CHAVEZ. The
    conversation is between John CHAVEZ and Modesta CHAVEZ.
    During the conversation, John CHAVEZ stated he was
    "waiting on that guy to send him a message" and he also
    stated to M. CHAVEZ to tell Erik "to get the GPS down."
    AGENTS NOTES: Based on agents training, experience, and
    knowledge of this investigation, agents believe John
    CHAVEZ is telling Modesta CHAVEZ that he is waiting on
    "Tono" to send him a text message for the OK for Modesta

CHAVEZ to travel to Texas to pick up methamphetamine and the address Modesta CHAVEZ needs to travel to.

11. On May 1, 2014, approximately 6:12 P.M., CST, agents conducting a court order wire intercept on 334-452-9434 (TT#1), a cellular telephone used by Modesta CHAVEZ, intercepted an outgoing call (session 462) to 334-246-0554, which is a calling card number. The conversation is between Modesta CHAVEZ and Mayito LNU. During the conversation, Mayito stated "I already spoke to "Tono" and he said for you to start leaving and give him an update 2 hours from there so they can let you know what time to pick up, but it's a sure thing." Also during the conversation, Mayito stated, " He will give the address to John and John can give you the address and I asked him if he was going to give "it" to us at that price and he doesn't want to, that asshole. He said "it's the same". I told him "don't be an asshole", you told me "it" would be less. He said "no, well it's 17". I told him, not even you, me, or Mode....don't be an asshole...leave it at 15; that way you and I can give it to Anna at 23, that will leave us 8 and he pays for the trip. Further, Mayito stated, "He said yes, they will

7

have one left and he was going to talk to the guy because it wasn't his. I told him, "don't be an asshole Tono, you and John are getting them cheaper. Don't be a fucking jerk, just let us have it at 15. So he said he was going to talk to the guy and see if he will leave 1 for us...1 for you". M. CHAVEZ then stated, "Hey, so what do I do? What if I take off and this jerk fails us?" Mayito then stated, "No, no I don't think so. They are letting him know. If this guy fails you, John better collect from him." Mayito then stated, "They will let you know but 1 is for Gordo(John), and 1 for him. In other words, 2 will stay and 1 is yours for you know who and the other 1...I don't know who get that 1, you guys may stay with that 1. But 1 stays, OK, you will have to separate that 1. I will tell this idiot to say that you have to deliver that 1. That's when you and Anna will coordinate to meet somewhere and give it to her." and M. CHAVEZ stated, "OK." AGENT NOTES: Based on agents training, experience, and knowledge of this investigation, agents believe M. CHAVEZ and Mayito are discussing that they will keep 1 pound out of the methamphetamine M. CHAVEZ is picking up from Texas. Also agents believe John and Tono are getting the methamphetamine at a cheaper price than M. CHAVEZ.

Further, agents believe that M. CHAVEZ is going to sell the methamphetamine to Anna LNU.

12. Furthermore, after learning of the planned trip to Dallas, Texas, agents established surveillance around 304 Sparrow Pointe Lane, Deatsville, Alabama, which is the residence of Modesta CHAVEZ and John CHAVEZ.

13. At approximately 6:50 P.M., CST, CADTF Agent Sims and CADTF Agent Jordan Denney observed Modesta BARAJAS-DE CHAVEZ leave 304 Sparrow Point Lane, Deatsville, Alabama, driving a four door, 2014 Ford F-150 bearing Alabama Tag 38AM428, and travel to Dallas, Texas. A check of the registration revealed that this is a rental vehicle that is registered to EAN Holdings LLC of 243 Montgomery Highway, Dothan, Alabama.

14. On May 2, 2014, approximately 8:29 A.M., CST, agents conducting a court order wire intercept on 334-452-9434 (TT#1), a cellular telephone used by Modesta CHAVEZ, intercepted an incoming call (session 519) from 334-414-3942, which is a telephone used by John CHAVEZ. The conversation is between John CHAVEZ and Modesta CHAVEZ. During the conversation M. CHAVEZ stated, "What was I

9

going to tell you? They haven't called you?" and J.
CHAVEZ responded, "No, why, you?" M. CHAVEZ then
responded, "Me either, but the....it's just that I went
to bed like at 3 A.M. almost 4." and J. CHAVEZ responded,
"Are you almost there?" AGENT NOTES:Based on agents
training, experience, and knowledge of this
investigation, agents believe M. CHAVEZ is wanting to
know if John CHAVEZ has spoken with "Tono" about where
and when she need to travel to pick up the
methamphetamine.

15. On May 2, 2014, approximately 9:21 A.M., CST, agents
conducting a court order wire intercept on 334-452-9434
(TT#1), a cellular telephone used by Modesta CHAVEZ,
intercepted an incoming call (session 525) from 334-414-
3942, which is a telephone used by John CHAVEZ. The
conversation is between John CHAVEZ and Modesta CHAVEZ.
During the conversation J. CHAVEZ stated, "Hey ma, "Tono"
is not answering." Also, during the conversation J.
CHAVEZ stated, "Call Aunt Lupe and see if he's there,
"Tono" doesn't answer." and M. CHAVEZ stated, "I just
showered, I will call." AGENT NOTES: Based on agents
training, experience, and knowledge of this
investigation, agents believe John CHAVEZ is telling M.

10

CHAVEZ that he has called "Tono" to see where and when M.
CHAVEZ needs to go and receive the methamphetamine, but
he can't get "Tono" to answer the phone. Further, agents
believe "Aunt Lupe" is "Tono's" mother and that's where
he lives.

16. On May 2, 2014, approximately 9:43 A.M., CST, agents
conducting a court order wire intercept on 334-452-9434
(TT#1), a cellular telephone used by Modesta CHAVEZ,
intercepted an outgoing call (session 537) to 334-414-
3942, which is a telephone used by John CHAVEZ. The
conversation is between John CHAVEZ and Modesta CHAVEZ.
During the conversation, M. CHAVEZ stated, "Call the
dude." and J. CHAVEZ responded, "He has to tell you." M.
CHAVEZ then stated, "No, well why does he have to tell
me." and J. CHAVEZ responded, "Have him give you that."
M. CHAVEZ stated, "I told him that you would call over
there." and J. CHAVEZ responded, "Tell him to give you
the address first. Why do I want it?". AGENT NOTES: Based
on agents training experience, and knowledge of this
investigation, agents believe M. CHAVEZ is wanting J.
CHAVEZ to call "Tono" and get the address, but J. CHAVEZ
wants M, CHAVEZ to call "Tono" to get the address because

11

M. CHAVEZ is the one traveling to pick up the
methamphetamine.

17. On May 2, 2014, approximately 10:32 A.M., CST, agents
conducting a court order wire intercept on 334-452-9434
(TT#1), a cellular telephone used by Modesta CHAVEZ,
intercepted an outgoing call (session 541) to 334-414-
3942, which is a telephone used by John CHAVEZ. The
conversation is between John CHAVEZ and Modesta CHAVEZ.
During the conversation, M. CHAVEZ stated, "They don't
answer." and J. CHAVEZ responded, "Fuck!" J. CHAVEZ then
stated, "Well, just stay there and see what happens."
AGENT NOTES: Based on agents training, experience, and
knowledge of this investigation, agents believe M. CHAVEZ
has not been able to make contact with "Tono" to get the
address. Further, agents believe J. CHAVEZ is telling M.
CHAVEZ to wait at the hotel until she receives the
address in Dallas, Texas.

18. On May 2, 2014, approximately 12:28 P.M., CST, agents
conducting a court order wire intercept on 334-452-9434
(TT#1), a cellular telephone used by Modesta CHAVEZ,
intercepted an outgoing call (session 563) to 334-414-
3942, which is a telephone used by John CHAVEZ. The

12

conversation is between John CHAVEZ and Modesta CHAVEZ.
During the conversation, J. CHAVEZ asked, "Did they call
you?" and M. CHAVEZ responded, "Yes, I'm going ahead and
the GPS is sending me on regular street." and J.
CHAVEZ stated, "Stop somewhere and ask someone to put the
address in for you." AGENT NOTES: Based on agents
training, experience, and knowledge of this
investigation, agents believe M. CHAVEZ received a call
on another telephone from the source of supply that she
was receiving the methamphetamine from and during the
call she received the address.

19. On May 2, 2014, approximately 3:27 P.M., CST, agents
    conducting a court order wire intercept on 334-452-9434
    (TT#1), a cellular telephone used by Modesta CHAVEZ,
    intercepted an incoming call (session 573) from 334-414-
    3942, which is a telephone used by John CHAVEZ. The
    conversation is between John CHAVEZ and Modesta CHAVEZ.
    During the conversation, J. CHAVEZ stated, "Yes, call
    them and tell them to put it right because you are lost."
    and M. CHAVEZ stated, "It's a fucking street." M. CHAVEZ
    then stated, "I'll ask right now where that street is.
    Honestly, I'm tired of struggling. These idiots." and J.

13

CHAVEZ responded, "Okay mother. I'm going to call "Tono"." M. CHAVEZ then stated, "I'm going to exit in the next town and for them to just go there. Seriously, I'm tired of traveling. What do they want me to do, just go straight to their house? But, that scares them too." AGENT NOTES: Based on agents training, experience, and knowledge of this investigation, agents believe M. CHAVEZ is lost. Further, agents believe M. CHAVEZ is wanting the source of supply for the methamphetamine to meet her, instead of traveling any further. Agents also believe that J. CHAVEZ was going to call "Tono" and see if he could call the source of supply and find exactly where M. CHAVEZ needed to go.

20. Modesta CHAVEZ continued to travel west on Interstate 20. Once CHAVEZ got around exit 503 in Terrell, Texas, Montgomery agents relinquished the lead role of surveillance to members of the Dallas DEA. CHAVEZ then continued west on Interstate 20 and eventually exited the interstate and went to the Olive Garden Restaurant located at 639 South Cockrell Hill Rd, Duncanville, Texas. At approximately 3:36 P.M., CST, CHAVEZ was observed approaching two subjects standing in the parking lot. Furthermore, it appeared that CHAVEZ was asking for

14

directions. At approximately 3:42 P.M., CST, CHAVEZ left
this area.

21. Modesta CHAVEZ then drove to the Oakcliff Shell gas
station located at 515 South Beckley Avenue, Dallas,
Texas. Once again, at this location CHAVEZ appeared to be
asking for directions. At this time, Dallas DEA agents
utilized an undercover agent to approach CHAVEZ and
attempt to give her directions. CHAVEZ advised the agent
that she was attempting to find a location located at
3434 West Illinois Avenue, Dallas, Texas. The agent then
offered to let CHAVEZ follow the agent to the location.
CHAVEZ agreed.

22. At approximately 4:42 P.M., CST, Modesta BARAJAS-DE
CHAVEZ arrived, following the DEA undercover agent, at
the Sierra Vista Plaza, located at 3434 West Illinois
Avenue, Dallas, Texas. CHAVEZ then spoke briefly with the
undercover agent and then parked in a parking spot in
front of Fiesta Mart Inc.

23. On May 2, 2014, approximately 5:04 P.M., CST, agents
conducting a court order wire intercept on 334-452-9434
(TT#1), a cellular telephone used by Modesta CHAVEZ,

15

intercepted an incoming call (session 588) from 334-414-
3942, which is a telephone used by John CHAVEZ. The
conversation is between John CHAVEZ and Modesta CHAVEZ.
During the conversation, M. CHAVEZ stated, "Good, just
waiting for them here at the store. I'm where they told
me to wait for them in front of the store. I'm here, but
they have not arrived, maybe they are suspicious. I don't
know." and J. CHAVEZ responded, "Nah, they will get
there, don't worry. Have you spoken to the "Mrs." AGENT
NOTES: Based on agents training, experience, and
knowledge of this investigation, agents believe M. CHAVEZ
is telling J. CHAVEZ that she is in the parking lot where
she is supposed to meet the source of the methamphetamine
and is waiting.

24. On May 2, 2014, approximately 5:09 P.M., CST, agents
conducting a court order wire intercept on 334-452-9434
(TT#1), a cellular telephone used by Modesta CHAVEZ,
intercepted an incoming call (session 592) from 469-516-
6334, which is a telephone used by FNU LNU( Source of
Supply for the methamphetamine). The conversation is
between FNU LNU and Modesta CHAVEZ. During the
conversation, the FNU LNU asked, "Where are you parked?"
and M. CHAVEZ responded, "I'm right in front of the

16

store, I was going to buy something to eat because I haven't eaten all day." FNU LNU then stated, "Green sweater right in front of the store. I don't see you." and M. CHAVEZ responded, "Right in front?" FNU LNU then stated, "A parrot. Did you see a Toyota Quest arrive.....Quest a green like Sienna." and M. CHAVEZ stated, "No, I didn't see you. I was talking to my son." FNU LNU stated, "Right in front of the lamps, the 2nd lamp in front is a white mini van and right beside it is a green one. Do you see it?" and M. CHAVEZ responded, "Let me see." M. CHAVEZ then stated, "I'm going to pretend I'm going into the store." and FNU LNU responded, "Okay, act like you are going inside. Oh yes I see you. Continue going straight, go to the other alley right in front. Over where the white car is, on your left hand side." AGENT NOTES: Based on agents training, experience, and knowledge of this investigation, agents believe that M. Chavez was speaking with the source for the methamphetamine and they were trying to locate each other to discuss the transaction.

25. At approximately 5:10 P.M., CST, DEA TFO Doug Walters and DEA TFO George Russell observed CHAVEZ meet with a Hispanic male wearing a brown shirt and khaki pants, in

17

front of Fiesta Mart Inc. While speaking with the male
subject, CHAVEZ and the male subject walked to a green,
Toyota SUV, bearing Texas tag CK2Y077, that was parked in
the parking lot. CHAVEZ and the male subject then parted
ways and CHAVEZ returned to her truck. Furthermore,
while CHAVEZ and the male subject were talking, DEA TFO's
Walters and Russell observed another Hispanic male,
wearing a green shirt and dark colored pants, standing at
the front of the shopping center that appeared to be
conducting counter-surveillance. Once the meeting
with CHAVEZ and the Hispanic male was complete, the
Hispanic male wearing the brown shirt and khaki pants
returned to the front of the shopping center where he met
with the Hispanic male that appeared to be conducting
counter surveillance.

26. On May 2, 2014, approximately 5:33 P.M., CST, agents
    conducting a court order wire intercept on 334-452-9434
    (TT#1), a cellular telephone used by Modesta CHAVEZ,
    intercepted an incoming call (session 601) from 469-516-
    6334, which is a telephone used by FNU LNU( Source of
    Supply for the methamphetamine). The conversation is
    between FNU LNU and Modesta CHAVEZ. During the
    conversation, M. CHAVEZ stated, "I'm confused." and FNU

LNU responded, "You are fine there. Isn't it open in the back?" M. CHAVEZ then stated, "Yes, but I can't open it." and the FNU LNU responded, "There's a little string, pull the end with both hands. It will open." M. CHAVEZ then stated, "I can't." and FNU LNU responded, "It's because it's broken. See the wire, get that and (U/I)it...Pull...open it..Did it open?...Don't pull it all the way....Get the cable with one hand....it opened....Okay the white box it there." M. CHAVEZ then stated, "oh okay." AGENT NOTES: Based on agents training, experience, and knowledge of this investigation, agents believe that FNU LNU was telling M. CHAVEZ how to open the compartment that contained the methamphetamine.

27. Once CHAVEZ returned to her vehicle she drove to where the green, Toyota SUV was located and parked next to it. Agents then observed CHAVEZ enter the SUV through the back hatch. CHAVEZ then removed a white box from the SUV and placed it in her vehicle. At approximately 5:36 P.M., CST, CHAVEZ left the area driving east on West Illinois Avenue. Members of the Montgomery DEA maintained surveillance of CHAVEZ while members of Dallas DEA initiated surveillance of the two Hispanic males that CHAVEZ met with.

28. Modesta CHAVEZ then drove to 404 West Illinois Avenue, Dallas, Texas where she stopped at Jack in the Box and entered the restaurant. A short time later, CHAVEZ left the restaurant and proceeded to Interstate 35. CHAVEZ again, at this time, appeared to be lost and ended up driving to downtown Dallas where agents subsequently lost contact with CHAVEZ in downtown Dallas. After several attempts to locate CHAVEZ were unsuccessful agents terminated surveillance and returned to Alabama. Although, agents were not able to locate CHAVEZ, agents continued to intercept telephone calls and receive tower locations.

29. On May 2, 2014, approximately 8:12 P.M., CST, agents conducting a court order wire intercept on 334-452-9434 (TT#1), a cellular telephone used by Modesta CHAVEZ, intercepted an incoming call (session 619) from 416-364-1111, which is a calling card. The conversation is between Mayito LNU and Modesta CHAVEZ. During the conversation, Mayito asked, "Are you loaded?" and M. CHAVEZ responded, "Yes." AGENT NOTES: Based on agents training, experience, and knowledge of this

investigation, agents believe Mayito was asking M. CHAVEZ
is she received the methamphetamine.

30. On May 2, 2014, approximately 8:47 P.M., CST, agents
conducting a court order wire intercept on 334-452-9434
(TT#1), a cellular telephone used by Modesta CHAVEZ,
intercepted an outgoing call (session 625) to 334-414-
3942, which is a telephone used by John CHAVEZ. The
conversation is between John CHAVEZ and Modesta CHAVEZ.
During the conversation, M. CHAVEZ stated, "I'm already
on 20!" and J. CHAVEZ responded later, "Are you OK?" M.
CHAVEZ then stated, "Call your cousin and tell him
everything is fine." AGENT NOTES: Based on agents
training, experience, and knowledge of this
investigation, agents believe M. CHAVEZ got lost and J.
CHAVEZ was ok. Further, agents believe M. CHAVEZ was
telling J. CHAVEZ to call "Tono" and tell him she had the
dope and en route to Alabama.

31. On May 3, 2014, approximately 5:58 A.M., CST, agents
conducting a court order wire intercept on 334-452-9434
(TT#1), a cellular telephone used by Modesta CHAVEZ,
intercepted an incoming call (session 672) from 334-414-

21

3942, which is a telephone used by John CHAVEZ. The conversation is between John CHAVEZ and Modesta CHAVEZ. During the conversation, J. CHAVEZ stated, "Yes, it's better." and M. CHAVEZ responded, "What?" and J. CHAVEZ stated, "Now it's better." M. CHAVEZ then stated, "Yes, but....." and J. CHAVEZ responded, "You see, when I tell you something it's because I know...There's no reason why I'd lie to you." M.CHAVEZ then stated, "But, they are not of those..." and J.CHAVEZ responded, "But, they almost the same." Further, M. CHAVEZ asked, " Yes, do you think it's a good idea for me to arrive or no?" AGENT NOTES: Based on agents training, experience, and knowledge of this investigation, agents believe M. CHAVEZ is tell J. CHAVEZ the methamphetamine doesn't look like the methamphetamine from the past and M. CHAVEZ is wanting to know if it's ok to arrive at 304 Sparrow Pointe Lane with the methamphetamine.

32. On May 3, 2014, approximately 6:38 A.M., CST, agents conducting a court order wire intercept on 334-452-9434 (TT#1), a cellular telephone used by Modesta CHAVEZ, intercepted an incoming call (session 690) from 334-414-3942, which is a telephone used by John CHAVEZ. The conversation is between John CHAVEZ and Modesta CHAVEZ.

During the conversation, J. CHAVEZ stated, "I'm about to have a heart attack here." and M. CHAVEZ responded, "I'm not getting the calls. You know that in this area..I don't get them." AGENT NOTES: Based on agents training, experience, and knowledge of this investigation, agents believe J. CHAVEZ was scared because M. CHAVEZ was traveling back from Dallas, TX with methamphetamine and M. CHAVEZ would not answer her phone.

33. On May 3, 2014, approximately 6:58 A.M., CST, agents conducting a court order wire intercept on 334-452-9434 (TT#1), a cellular telephone used by Modesta CHAVEZ, intercepted an outgoing call (session 692) to 334-414-3942, which is a telephone used by John CHAVEZ. The conversation is between John CHAVEZ and Modesta CHAVEZ. During the conversation, M. CHAVEZ stated, "Hey...go check now." and J. CHAVEZ responded, "I already circled around and all is good." AGENT NOTES: Based on agents training, experience, and knowledge of this investigation, agents believe M. CHAVEZ was telling J. CHAVEZ she was about to arrive and J. CHAVEZ had already been out looking for Law Enforcement.

34. On May 3, 2014, at approximately 7:00 A.M., agents reviewing the pole camera observed Modesta CHAVEZ arrive at 304 Sparrow Pointe Lane, Deatsville, Alabama.

DEA Task Force Officer
George Russell

_____ TFC

Sworn to and subscribed before me
this 9th day of May, 2014
at Montgomery, AL.

_____
Wallace Capel
United States Magistrate Judge

24